No. 18-80050

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HUU NGUYEN,
*Plaintiff/Petitioner,*

v.

NISSAN NORTH AMERICA, INC.,
*Defendant/Respondent.*

Appeal from an Order of the United States District Court
for the Northern District Of California
Case No. 5:16-Cv-05591-Lhk (Ncx)

## OPPOSITION TO PETITION FOR PERMISSION TO APPEAL

E. Paul Cauley, Jr.
S. Vance Wittie
*(Counsel of record)*
DRINKER BIDDLE & REATH LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone: 469-357-2500
Facsimile: 469-327-0860

Michael J. Stortz (SBN #139386)
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

*Counsel for Defendant/Respondent Nissan North America, Inc.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Nissan North America, Inc., ("NNA") states that Nissan Motor Co., Ltd., a Japanese entity organized under the laws of Japan, is the parent company of NNA. Other than Nissan Motor Co., Ltd., no publicly held corporation owns 10% or more of NNA's stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ...................................................... i

INTRODUCTION ..........................................................................................1

STATEMENT OF THE CASE ........................................................................1

DISCUSSION...............................................................................................4

    I.    There Is No Split in Authority Requiring Interlocutory
        Appellate Intervention ......................................................4

    II.    The District Court's Opinion Is Consistent with Ninth Circuit
        and Supreme Court Jurisprudence .......................................6

        A.    The District Court Properly Focused on the Absence of a
               Valid Class wide Damages Methodology...............................6

        B.    Petitioner's Damages Theory Did Not Match His
               Substantive Claims ...............................................8

        C.    The District Court Applied an Appropriate Prospective
               Approach in Assessing the Damages Model .........................11

    III.    Denial of Certification Does Not Represent the "Death Knell"
        of the Litigation ............................................................13

CONCLUSION ...........................................................................................15

STATEMENT OF RELATED CASES ............................................................16

CERTIFICATE OF COMPLIANCE................................................................17

CERTIFICATE OF SERVICE.......................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abby v. City of Detroit,*
218 F.R.D. 544 (E.D. Mich. 2013) .................................................................14

*Brazil v. Dole Packaged Foods, LLC,*
660 Fed. Appx. 531 (9th Cir. 2016) ............................................................7, 9

*Cardinal Health 301, Inc. v. Tyco Electronics Corp.,*
169 Cal. App. 4th 116 (2008).........................................................................10

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013)........................................................................................2, 7

*Doyle v. Chrysler Corp.,*
663 Fed. Appx. 576 (9th Cir. 2016) .................................................................7

*Falco v. Nissan North America, Inc.,*
2016 WL 1327474 (C.D. Cal. 2016) .......................................................4, 5, 6

*Kline v. Coldwell Banker & Co.,*
508 F.2d 226 (9th Cir. 1974)..........................................................................14

*Leyva v. Medline Indus., Inc.,*
716 F.3d 510 (9th Cir. 2013)....................................................................2, 6, 7

*In re POM Wonderful, LLC,*
2014 WL 1225184 (C.D. Cal. Mar. 25, 2014)..................................................5

*Pulaski & Middleman, LLC v. Google, Inc.,*
802 F. 3d 979 (9th Cir. 2015)..............................................................6, 11, 12

*Stout v. Turney,*
22 Cal. 3d 718 (1978) ......................................................................................9

*In re Tobacco Cases II,*
240 Cal. App. 4th 779 (2015)...........................................................................9

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009)........................................................5

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012)....................................................8

## STATUTES, RULES & REGULATIONS

Cal. Civ. Code § 1750 *et seq.*..........................................2, 8, 14

Cal. Civ. Code § 1780(e) ...................................................14

Cal. Com. Code § 2714(2) .................................................10

Fed. R. Civ. P. 23.............................................................7

Fed. R. Civ. P. 23(a) ......................................................1, 7

Fed. R. Civ. P. 23(b)(3)...........................................1, 2, 3, 7

Fed. R. Civ. P. 23(c)(4)....................................................7

Fed. R. Civ. P. 23(f).....................................................1, 13

**INTRODUCTION**

Federal Rule of Civil Procedure 23(f) is reserved for truly exceptional cases. This case is hardly exceptional. The order denying class certification applied well-settled principles of damages law to a deeply flawed proposed damages model. None of the exceptional circumstances with which Rule 23(f) is concerned—manifest legal error and unsettled questions of law—are present here. The District Court scrupulously evaluated Petitioner's proposed damages model, found it unacceptable under well-established Supreme Court and Ninth Circuit precedent, and on that basis denied certification. The District Court's analysis is well-grounded in law, and fully supported by its careful analysis of the evidentiary record. Petitioner's request for interlocutory review should be denied.

**STATEMENT OF THE CASE**

Petitioner Huu Nguyen moved to certify a class of California original owners and lessees of new Nissan 350Z and 370Z vehicles, Infiniti G35 and G37 model sedans and coupes, and Infiniti Q60 vehicles equipped with manual transmissions. He argued that in certain circumstances, drivers could experience a clutch pedal that "feels soft" or "goes to the floor" because a clutch system component known as the concentric slave cylinder ("CSC") is made of materials that do not conduct heat as well as alternative materials do. Invoking Federal Rule of Civil Procedure 23(a) and (b)(3), Petitioner sought to certify claims under California law for breach of the

1

implied warranty of merchantability and violation of the Consumer Legal Remedies Act, Civil Code section 1750 et seq. ("CLRA") for the alleged failure to disclose the putative defect.

Petitioner alleged that his vehicle "was driven for approximately 26,629 miles" without incident. Order Denying Motion for Certification [D.E. 97] ("Order") at 10:21-22, citing First Amended Complaint [D.E. 35] at ¶¶ 32-33. At that time, the purportedly defective CSC was replaced at no charge under warranty. Petitioner further alleged his "vehicle was then driven another 25,000 miles before the replacement CSC malfunctioned." Order at 10:23-24. Other evidence in the record at class certification showed "extended use of the [allegedly] defective CSCs[.]" Order at 10:27.

Based on this record, the District Court considered whether Petitioner met his burden of showing that "'damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).'" Order at 8:8-9, quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). While acknowledging that "individual damages calculations alone do not make class certification inappropriate under Rule 23(b)(3), *see Leyva v. Medline Indus., Inc*., 716 F.3d 510, 514 (9th Cir. 2013)[,]" (*id*. at 8:4-6), the District Court undertook a careful review of Petitioner's proposed damages model to ascertain whether that model "'measure[d] only those damages attributable to'" his theory of liability. *Id*. at 8:9-10. Among other things, the District Court

reviewed the damages model proffered by Petitioner's retained expert Stephen Boyles, which "se[t] damages equal to the cost to replace the defective CSC with a working CSC[.]" Order at 8:24-25 (noting estimated replacement cost of $723.95 per class vehicle).

The District Court concluded that Petitioner had not met his burden under Rule 23(b)(3) of providing a damages model that matched his theory of liability, because, based on the record, the CSC was not completely valueless to class members. In addition to Petitioner's own experience, class members might receive value from the CSC "by selling it, repurposing it, or simply driving a ways before replacing it[.]" Order at 9:25-26. Likewise, "short term lessors who never experienced the defect during the period of the lease" would receive the full replacement cost, "and thus a 100 percent windfall." Order at 12:20 & n.3.

Relying on a series of decisions, including decisions of this Court, the District Court concluded that Plaintiff's damages model unjustifiably "presumes purchasers would deem the defective CSC valueless." Order at 12:7. As such, the model failed to measure only those damages attributable to Plaintiff's liability theory "because it awards damages equal to the value of a non-defective CSC (the benefit of the bargain) without deducting the value of the defective CSC." *Id.* at 12:9-11. Because Plaintiff had not shown that predominance of common issues, as required by Rule 23(b)(3), the District Court denied class certification. *Id.* at 13:1-3.

## DISCUSSION

### I. There Is No Split in Authority Requiring Interlocutory Appellate Intervention

Petitioner's initial ground for interlocutory review—that there is some sort of fundamental conflict in the treatment of benefit-of-the-bargain damages among the district courts—derives entirely from a single passage in a single unpublished case, *Falco v. Nissan North America, Inc*., 2016 WL 1327474 (C.D. Cal. 2016). In accepting an average-cost-of-repair model as a basis for calculating class damages, the *Falco* court reasoned that "by receiving restitution in the amount of average repairs, the class would be getting the benefit-of-the-bargain because they would be put in the same position they would have been had the car not been sold with the defective timing chain system. . . ." *Id.* at *12. The supposed conflict is derived from the District Court's statement that *Falco's* analysis is incomplete because it failed to consider the potential value of the challenged components. Order at 9:11-10:9. Petitioner contends that this somehow signals a split in the way the district courts evaluate benefit-of-the-bargain damages claims.

No such split exists. A split in authority would occur only if the district courts had articulated inconsistent legal rules. But, as the District Court observed, the *Falco* court did not address the issue of the value of the existing timing chain system at all. Order at 12:20. It did not *hold* that it is appropriate to ignore the value of the

existing product in calculating benefit-of-the-bargain damages. It simply failed to identify or discuss the issue.

Petitioner tries to explain the *Falco* court's silence by speculating that the value of the defective part was not raised or was deemed irrelevant. (Petition p. 14). Neither explanation indicates a conflict of authority. If the issue was not raised in the case, the *Falco* court's failure to address it could not create a conflict with another court's analysis in a case where the issue *was* raised. And the *Falco* court never stated that the challenged component's value was irrelevant to benefit-of-the-bargain damages. While that may be Petitioner's theory, the *Falco* court did not express it.

In fact, there is no doctrinal split among the courts. The requirement that a claimant account for the value actually received in assessing benefit-of-the-bargain damages is uncontroversial. "The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009). Indeed, the same judge who authored the *Falco* opinion applied these very principles to reject an attempt to recover the full purchase price of allegedly misrepresented fruit juice where its purchasers had received some benefits such as hydration, vitamins and calories. *In re POM Wonderful, LLC*, 2014 WL 1225184 at *2-3 (C.D. Cal. Mar. 25, 2014).

Hence, *Falco* does not represent an alternative view of the applicable legal rule, but rather simply a lapse in applying it.

Petitioner's argument is further undermined because the differing results between the present case and *Falco* may be explained by a factual distinction. As the District Court observed, the *Falco* damages model awarded the cost to repair an existing component rather than to replace it with a completely new one. Thus, the *Falco* approach "mitigates concerns that class members will receive a windfall, because it sets damages equal to the amount to make a defective part serviceable, rather than the amount necessary to procure an entirely new part." Order at 12:12-20. In any event, in the absence of overt disagreement about legal principles, there is no warrant for this Court to intervene.

## II. The District Court's Opinion Is Consistent with Ninth Circuit and Supreme Court Jurisprudence

### A. The District Court Properly Focused on the Absence of a Valid Class wide Damages Methodology

The second ground asserted by Petitioner also is incorrect. The District Court did not disregard this Court's holding that damages *calculations* alone cannot defeat class certification. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F. 3d 979, 987 (9th Cir. 2015). Indeed, the District Court acknowledged that the "'amount of damages is invariably an individual question and does not defeat class action treatment.'" Order at 8:67, quoting *Leyva.*, 716 F.3d at 514.

6

But this does not mean that damages are categorically irrelevant to the predominance inquiry. Rule 23 requires the court to determine whether common issues predominate by evaluating the entire case, not just a portion of the case. Fed. R. Civ. P. 23(b)(3).[1]

Hence, the District Court also heeded the Supreme Court holding that damages must be capable of measurement on a classwide basis. *Comcast Corp.*, 133 S.Ct. at 1433. The class proponent must advance an appropriate damages methodology. In particular, the proposed damages model must measure only those damages attributable to the plaintiffs' theory of liability. *Leyva*, 716 F.3d at 514. As this Court has observed, the rule that the need for individualized damages findings does not preclude certification has been applied in contexts where a common methodology for measuring damages existed. *Doyle v. Chrysler Corp.*, 663 Fed. Appx. 576, 579 (9th Cir. 2016). But where the proponent of certification fails to present an appropriate damages methodology, the Court must deny certification. *See e.g. Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531,

---

[1] Petitioner also invoked Rule 23(c)(4) to argue that the damages portion of the case could be severed, and the remaining issues certified for class treatment under Rule 23(a) and (b)(3). The District Court rejected this argument on the ground that Petitioner failed to show that Rule 23(c)(4) certification would materially advance the litigation. Order at 14:2-8 ("Two sentences of speculation simply cannot justify certification of a Rule 23(c)(4) class.") Petitioner does not contend the District Court erred in so ruling.

534-35 (9th Cir. 2016) (affirming denial of certification based on inappropriate application of full refund method).

**B. Petitioner's Damages Theory Did Not Match His Substantive Claims**

Petitioner's substantive claims were grounded on allegations that NNA violated the CLRA by failing to disclose the alleged clutch defect and breached the implied warranty of merchantability by selling vehicles with defective concentric slave cylinders. As a result, he contends he paid more for his vehicle than he would have paid if the alleged defect had been disclosed. However, Petitioner's average cost-of-repair model does not match the remedies available for these claims. As the District Court explained, the replacement-cost model Petitioner proposed does not truly represent the benefit-of-the-bargain measure of damages because it fails to account for the value of what the class members actually received.[2] The application of Petitioner's theory would create a windfall for the class members because they

---

[2]    The District Court's analysis merely scratches the surface of the many deficiencies in the damages model. The replacement-cost model is based on the premise that vehicle purchasers bargained for a defect-free vehicle, but Petitioner did not contend, and certainly presented no evidence, that NNA represented or warranted that the vehicle had no defects or even that consumers expected a complete absence of defects. Moreover, Petitioner's model explicitly attempts to compensate class members because the alleged defect supposedly impairs the vehicle's "performance, safety and value." (Petition p. 11). Yet, under California law the disclosure duty arises only as to unreasonable safety hazards. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). The proposed model made no attempt to isolate any reduction in value attributable to the alleged safety risk. Petitioner also failed to justify an approach awarding the *average* cost of repair. Even if repair costs were appropriate, each putative class member would presumably be entitled to receive the amount necessary to repair that person's vehicle.

would receive both the value of the defect-free vehicle they supposedly bargained for *and* the value of the allegedly defective part as well. Order at 9:14-27.

That Petitioner labels his theory "benefit of the bargain" does not mean it matches the legal meaning of that phrase. Indeed, his theory cannot constitute a means of assessing benefit-of-the-bargain damages because the requirement to take into account the value of the product received is inherent in such damages. The benefit-of-the-bargain theory compares the value of the thing received with the value it would have had as warranted or represented. *Stout v. Turney*, 22 Cal. 3d 718, 725 (1978). The claimant can account for value received either by proving that the thing acquired was valueless—in which case the claimant may employ the full refund theory—or by subtracting the value of thing acquired from the purchase price paid. In *Brazil*, this Court affirmed the denial of certification based on the lack of a valid class wide damages model where plaintiffs did not account for the value of the fruit they had purchased. 660 Fed. Appx. at 534. The Court noted that under California law, the claimant is entitled to receive the difference between what the plaintiff paid and the value received in turn. A full refund is available only where the product received is worthless. *Id.* at 534-35 (citing *In re Tobacco Cases II*, 240 Cal. App. 4th 779 (2015)).

Petitioner's proposed model completely fails to account for the value of what the class members acquired. They do not subtract any sum to represent the value of

what was received.  And, as the District Court observed, Petitioner presented no evidence the vehicles as a whole or the individual concentric slave cylinder had no value at the time of sale.  Order at 10:10-19.  Petitioner attempt to argue here the original concentric slave cylinders had no prospective value, but they did not raise this argument.  Any such notion is strongly contradicted by the circumstances of Petitioner's own claim.  He received the use of one concentric slave cylinder for over 25,000 miles, received a new one at no cost under the warranty and then received the use of the new cylinder for an additional 25,000 miles.  Order at 10:21-24. Moreover, Petitioner alleges that he was overcharged in purchasing a *vehicle*, not an isolated part.  The vehicle unquestionably had value at the time of sale, even if one of its parts was defective.

It is equally clear the implied warranty claims required consideration of the value received.  Section 2714 of the Uniform Commercial Code sets the basic measure of damages as "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."  Cal. Com. Code § 2714(2).  *See Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116, 150 (2008).  Petitioner never explains how his proposed model meets the statutory requirement.  Indeed, he seems to ignore the warranty-based claims altogether.

Petitioner criticizes the District Court for referring to cases addressing the full-refund method, alleging their version of the benefit-of-the-bargain theory is entirely different. This is incorrect. The full-refund method is merely the application of basic benefit-of-the-bargain principles to cases where the claimant alleges that the product acquired had no value. In such a case, the amount the claimant paid is taken as the value of the product as represented. It is unnecessary to subtract anything from the amount paid because the claimant received no value. Although Petitioner does not seek a refund, his theory purports to place the purchasers in the same position they would have been if the vehicle had not been "defective," according to their theory, by providing the average amount of money it would take to buy and install a supposedly defective part. The full-refund cases are directly analogous to the present case because, under Petitioner's theory, the same windfall exists. The class members will have received not only the new part, but also the value of the old part.

## C. The District Court Applied an Appropriate Prospective Approach in Assessing the Damages Model

Petitioner alleges that the requirement to account for the value of the challenged product somehow runs afoul of this Court's holding that damages in such a case are measured at the time of sale. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015). There is no such conflict. Petitioner assumes the value of the product received must necessarily be evaluated retrospectively, taking

11

into account the value of the actual performance of the product for each claimant. He ignores the fact that even a flawed or misrepresented product may have *prospective* value at the time of sale. That a reasonable purchaser or the market as a whole, having knowledge of the alleged flaw, would reasonably demand a discount does not mean that zero value would be applied to the product.

Petitioner's case is based on the theory that putative class members overpaid for a *vehicle* (not a part) because, unknown to them, it had a defective concentric slave cylinder. But Petitioner cannot credibly argue that an automobile capable of providing over 25,000 miles of service has no value to a prospective purchaser with knowledge of its flaws. The District Court appropriately focused on that prospective value. "The damages model therefore errs in assuming that all consumers *would discount the amount they would be willing to pay for the vehicle* by the full replacement cost of a CSC even though the consumer received some value from the defective CSC." Order at 10: 6-9 (emphasis added).

In fact, it is Petitioner's flawed theory that is contrary to the holding in *Pulaski & Middleman*. This Court held that the measure of damages in a fraudulent omission case is the difference between the price paid and the amount that would have been paid had the information been disclosed. 802 F.3d at 989. This "would have paid" calculation inherently takes into account the prospective value of what the claimant actually received. Unless the product is valueless, its value at the time of sale is

subtracted from what the consumer actually paid to derive the amount of the claimant's damages.

Strikingly, Petitioner never explains how his proposed model satisfies the "would-have-paid" requirement. He presented no evidence or argument, based on either economic theory or actual consumer behavior, indicating the market would discount the price of the vehicle by the average cost of repair if the alleged defect had been disclosed. Under the record before it, the District Court was required to reject the flawed damages model. The rejection cannot have been manifest error.

## III. Denial of Certification Does Not Represent the "Death Knell" of the Litigation

As to his claim that the District Court sounded the "death knell" on this action, Petitioner advances the single argument that his limited amount of damages means that they have no practical ability to continue the litigation absent class certification. If this factor alone were sufficient to secure review, the Court would be required to accept every appeal of certification in cases involving consumer products. Yet, it has not done so.[3]

---

[3]  Instead, the Court has routinely denied Rule 23(f) petitions in cases invoking California's consumer protection statutes. *See, e.g.*, *Webb v. Carter's, Inc.*, No. 11-80045 (9th Cir. June 28, 2011) (denying permission to appeal denial of certification in consumer protection case); *Cardinale v. Samsung Elecs. Co.*, No. 11-80102 (9th Cir. June 28, 2011) (same); *Konik v. Time Warner Cable, LLC*, No. 10-80229 (9th Cir. Feb. 10, 2011) (same); *Galvez v. Touch-Tel U.S.A., L.P.*, No. 09-80190 (9th Cir. Mar. 9, 2010) (same); *Torres v. Microsoft Corp.*, No. 09-80160 (9th Cir. Jan. 21, 2010) (same); *Picus v. Wal-Mart Stores, Inc.*, No. 09-80060 (9th Cir. June 30, 2009) (same); *Douglas v. Talk America Inc.*, No. 09-80056 (9th Cir. May 28, 2009) (same).

Moreover, this argument fails to take into account the mandatory fee-shifting provisions of the CLRA, which would allow Petitioner to prosecute his individual claim if it had merit. The statute provides that the court "shall award court costs and attorneys' fees to a prevailing plaintiff" in litigation to enforce the statute. Cal. Civ. Code §1780(e). Thus, if Petitioner prevails, he may recover his costs and fees even if they exceed the amount awarded in the judgment. Petitioner presents no reasoned argument suggesting that he could not continue as an individual litigant. *See Kline v. Coldwell Banker & Co.*, 508 F.2d 226, 234 n. 5 (9th Cir. 1974) (where statute allows for recovery of attorneys' fees and costs by successful litigants, "it may be safely assumed that a great many of the cases could be reportedly prosecuted."); *Abby v. City of Detroit*, 218 F.R.D. 544, 549 (E.D. Mich. 2013) (fee shifting provision in civil rights statute weighs against finding that class action was a superior form of adjudication because such statutes provide adequate incentives for litigation).

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

14

## <u>CONCLUSION</u>

For the foregoing reasons, NNA respectfully requests that the Court deny the

Petition.

Dated: May 3, 2018           /s/ Michael J. Stortz

E. Paul Cauley Jr.                 Michael J. Stortz (SBN #139386)
S. Vance Wittie                  DRINKER BIDDLE & REATH LLP
*(Counsel of Record)*           50 Fremont Street, 20th Floor
DRINKER BIDDLE & REATH LLP    San Francisco, CA 94105-2235
1717 Main Street, Suite 5400     Telephone: (415) 591-7500
Dallas, Texas 75201-7367       Facsimile: (415) 591-7510
Telephone: 469-357-2500
Facsimile: 469-327-0860       *Counsel for Defendant/Respondent*
                                   *Nissan North America, Inc.*

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Circuit Rule 28-2.6, NNA states that it is unaware of any related

case currently pending in this Court.


Dated:  May 3, 2018                          /s/ Michael J. Stortz
                                             Michael J. Stortz (SBN #139386)

                                             *Counsel for Defendant/Respondent*
                                             *Nissan North America, Inc.*

16

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1) because it contains 3,899 words, as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type of style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.


Dated:  May 3, 2018                                   /s/ Michael J. Stortz_____

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2018, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  I further certify that all participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated:  May 3, 2018                            /s/ Sylvia Lee